UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

LORI J. WATSON,

               Plaintiff,

v.                                           Case No.  5:08-cv-446-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

               Defendant.

_____

## ORDER

Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for disability insurance benefits and supplemental security income. (Doc. 1.) The Commissioner has answered (Doc. 6), and both parties have filed briefs outlining their respective positions. (Docs. 12 & 13.) For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED**.

## I.  PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits and supplemental security income alleging a disability onset date of August 19, 2003. (R. 51, 272.) Plaintiff's applications were denied initially and upon reconsideration. (R. 29-30, 262-63.) Thereafter, Plaintiff timely pursued her administrative remedies available before the Commissioner and requested a hearing before an Administrative Law Judge ("ALJ"). (R. 37.) The ALJ conducted Plaintiff's administrative hearing on December 7, 2005. (R. 281.) The ALJ issued a decision partially favorable to Plaintiff on May 8, 2006. (R. 281-87.) In response to Plaintiff's request for review, the Social Security Administration's

Office of Hearings and Appeals vacated the ALJ's decision and remanded the case back to the ALJ for further evaluation of Plaintiff's disability claim. (R. 307-08.) On remand, the ALJ conducted a second administrative hearing on October 4, 2007. (R. 410-57.) Thereafter, the ALJ issued a decision partially favorable to Plaintiff on October 26, 2007. (R. 20-28.) Plaintiff's subsequent request for review of the hearing decision by the Social Security Administration's Office of Hearings and Appeals was denied. (R. 10-12.) Plaintiff then appealed to this Court. (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla in that the evidence must do more than merely "create a suspicion of the existence of [a] fact," and must include "such relevant evidence as a reasonable person would accept as adequate to support the conclusion."[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking

---

[1] *See* 42 U.S.C. § 405(g).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Richardson v. Perales, 402 U.S. 389, 401(1971); Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982)); *accord* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]   The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, she is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does

---

[4] Foote, 67 F.3d at 1560; *accord* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding court must scrutinize entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding court must also consider evidence detracting from evidence on which Commissioner relied).

[5] Keeton v. Dep't Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *See* Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in Title 20, Part 404, Subpart P, Appendix 1 of the Code of Federal Regulations, she is disabled.[11] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[12] Fifth, if a claimant's impairments (considering her residual functional capacity ("RFC"), age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

---

[10] Id. § 404.1520(c).

[11] Id. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

[13] Id. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); see also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2.
In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.
Id. (internal citations omitted).

[16] Walker, 826 F.2d at 1002. Once the burden shifts to the Commissioner to show that the claimant can perform other work, the grids may come into play. Id.

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[17] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the grids as a framework to evaluate vocational factors so long as the ALJ introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

### III. SUMMARY OF THE RECORD EVIDENCE

Plaintiff was fifty one (51) years old at the time of the ALJ's partially favorable decision on October 26, 2007. (R. 51.) She attended school through the fifth grade and she has previous work experience as a nurse's aide, waitress, and meat packer. (R. 78,

---

[17] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987) ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] See id.

[21] See Doughty v. Apfel, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

5

86-93.) Plaintiff contends that she has been unable to work since August 19, 2003 due to injuries to her neck and back and problems with her lungs. (R. 73.) Plaintiff is insured for benefits through December 31, 2008. (R. 48.)

**Medical Evidence of Plaintiff's Physical Impairments**

Plaintiff has a long history of medical treatment at Clermont Medical Center dating back as far as September 2001. (R. 252-255). Dr. Christopher Guzik,[22] Plaintiff's treating physician, began treating Plaintiff in April 2002. At that time, he assessed Plaintiff as having cervical radiculopathy and noted her history of arthritis, tendinitis and degenerative joint disease of the cervical spine. (R. 250.) Dr. Guzik referred Plaintiff to Dr. Michael Kilbride for "interlesional injection and possible surgical evaluation." (R. 250.)

Per Dr. Guzik's referral, Dr. Michael Kilbride examined Plaintiff in April 2002 for her complaints of radicular right upper extremity pain. Based on his examination and x-ray results, Dr. Kilbride diagnosed cervical spondylosis and discussed epidural therapy with Ms. Watson. (R. 190, 191.) In June 2002, cervical spine x-rays ordered by Dr. Kilbride revealed mild degenerative changes in Plaintiff's cervical spine. (R. 202.) Between April 2002 and January 2003, Dr. Kilbride administered several cervical epidural injections. (R. 173-177). Dr. Kilbride administered another cervical epidural injection in November 2003 following an acute exacerbation of Plaintiff's symptoms. (R. 172.)

---

[22] Dr. Christopher Guzik, Plaintiff's treating physician since April 2002, works at Clermont Medical Center.

In August 2003, Plaintiff was involved in a motor vehicle accident that resulted in injuries to her spine. Although Plaintiff reported complaints of neck and shoulder pain prior to August 2003, apparently the injuries she sustained in the motor vehicle accident substantially impacted her pre-existing condition. (R. 125, 127.) Plaintiff was admitted to South Lake Hospital on August 22, 2003 pursuant to her complaints of neck pain and stiffness, joint pain, and backache with a decreased range of motion associated with her injuries. (R. 125, 127, 245, 246.) Results of x-rays taken during Plaintiff's hospitalization showed moderate "diffuse multilevel degenerative changes" of the thoracic spine, "mild to moderate diffuse changes" in the lumbar spine; and central disk protrusion and disc bulging" in the cervical spine with spondylosis. (R. 122,125). An MRI of Plaintiff's cervical spine revealed evidence of degenerative disc disease, bulging annuli at C4-C5 and C5-C6 with additional "prominent posterior disk protrusion at C6-C7 encroaching the thecal sac." (R. 201.) In September 2003, Dr. Kilbride ordered electrodiagnostic studies which showed mild median nerve compression at Plaintiff's right wrist. (R. 123-124, 129.)

In September 2003, shortly after Plaintiff's motor vehicle accident, Dr. Guzik prepared a "return to work" authorization in which he limited Plaintiff as follows:

> No repetitive arm movements for more than 30 seconds at a time and then needs a five minute rest before repetitive arm movement again. No standing more than 5 minutes at a time and then needs a 15 minute rest to sit before standing again. No lifting more than 5 pounds. No work in temperature greater than 85 degrees F or less than 60 degrees F. Maximum 5 hours work daily and 15 hours weekly."[23]

---

[23] (R. 249.)

Pursuant to Plaintiff's persistent complaints of neck pain, Dr. Kilbride referred Plaintiff for an orthopedic consultation with Dr. Michael Broom. Dr. Broom examined Plaintiff in October 2003 and observed an unassisted normal gait, positive Tinel's sign bilaterally, tenderness and limited range of motion in the cervical spine, tenderness in her left shoulder, and tenderness with normal range of motion in the lumbar spine. He recommended physical therapy. (R. 155-56.)

Plaintiff participated in five physical therapy sessions between October 20, 2003 and November 3, 2003. (R. 158-71.) During her final treatment session, Plaintiff was able to perform all therapeutic activities "without complaints of pain or difficulty." Plaintiff advised she was "feeling great" and was ready to return to work. Plaintiff's physical therapist noted an 80% improvement in her overall condition and that 100% of the goals established during her initial evaluation had been met. (R. 158.) The physical therapist also noted that Plaintiff was reportedly capable of performing housecleaning activities and pulling down her garage door without limitation. (R. 159.)

Dr. Guzik's subsequent treatment records, dated through June 2007, give detailed descriptions of Plaintiff's symptoms and diagnoses, as well as her medications. His clinical findings consistently revealed a decreased range of motion and tenderness in Plaintiff's cervical spine, flattening of the lumbar curve, and tenderness over her sacroiliac region. Over the course of his treatment of Plaintiff, Dr. Guzik prescribed various pain medications and muscle relaxers. (R. 232-44, 357-391.) In January 2004, Dr. Guzik added additional diagnoses to Plaintiff's medical history: degeneration of

lumbar or lumbosacral intervertebral disc, and spondylosis with myelopathy of the lumbar region. (R. 239.)

On an insurance form dated January 19, 2004, Dr. Guzik opined that Plaintiff would not be able to return to work for at least one year, and that she was restricted to no lifting over 5 pounds, no forward bending, and no overhead work. (R. 248.) In August 2004, Dr. Guzik repeated his prior assessment and limited Plaintiff to no lifting over 5 pounds, no forward bending, and no overhead work. (R. 261).

Dr. Alex Perdomo performed a consultative examination of Plaintiff in March 2004 at the request of the Social Security Administration. Plaintiff reported with complaints of chronic shoulder and back pain, and shortness of breath. Dr. Perdomo's examination of Plaintiff revealed radiating pain into the mid and lower back with bilateral shoulder abduction; mild tenderness over the lumbar paraspinal muscles; and decreased cervical and thoracolumbar ranges of motion. (Tr. 206.) Dr. Perdomo observed moderate to severe musculoskeletal functional limitations on physical examination of the cervical and thoracolumbar spine, but no musculoskeletal functional limitations in Plaintiff's shoulder. Dr. Perdomo's impression was that Plaintiff suffered from chronic pain in her cervical and thoracolumbar spine, chronic shoulder pain, chronic obstructive pulmonary disease, nicotine dependence, a history of chronic headaches, and he opined that during a normal work day Plaintiff would be capable of standing and walking for six hours in an eight hour workday with normal breaks, occasional lifting and carrying of no more than ten pounds, and no repetitive bending. During his examination of Plaintiff, Dr. Perdomo observed Plaintiff was able to walk

unassisted without difficulty, sit comfortably during the examination and get on and off of the examination table without any problems. (R. 205-09.)

Two non-examining state agency physicians reviewed Plaintiff's file to assess her physical residual functional capacity. In January 2004, Dr. Keith Holden opined that Plaintiff was capable of lifting and/or carrying twenty pounds occasionally and ten pounds frequently; standing and/or walking for about six hours in an eight hour workday; sitting (with normal breaks) for about six hours in an eight hour workday; and pushing / pulling without limitation. He further found Plaintiff to have no postural, manipulative, or environmental limitations. (R. 182-86.) He noted that "the severity of the [symptoms] alleged are partially credible based on [abnormal] neuro exams, functional [range of motion], normal gait and mildly abnormal diagnostic studies." (R. 187.) The second non-examining state agency physician reviewed Plaintiff's file in April 2004 reached the same conclusion regarding Plaintiff's functional capacity as the prior non-examining state agency physician and noted that Plaintiff's "symptoms are disproportionate to the objective data." (R. 210-15.)

**Plaintiff's Mental Health**

None of the medical evidence submitted for the time period spanning August 2003—Plaintiff's alleged onset date—through January 2006—the date the ALJ determined Plaintiff became disabled shows any signs that Plaintiff was suffering from a severe mental impairment. In fact, during that time frame, numerous examining physicians noted Plaintiff's mental status as "normal." (R. 121, 133, 206, 207-09, 235-38, 389.) In April 2004, a consultative examination performed by Dr. Alexander T.

Gimon at the request of the Social Security Administration was unremarkable. Dr. Gimon acknowledged Plaintiff's history of depression but, based upon his examination and observations, Dr. Gimon opined that Plaintiff's daily functioning was not limited by a mental impairment, that her personal skills were adequate, she was capable of following instructions and handling the stress of a routine workday, and that her mental status is intact. He further noted "[r]eturning to work will help improve [her] mood [and] [h]er claim should solely be based on her physical complaints." (R. 205-09.) The only evidence of functional limitations resulting from Plaintiff's mental health post-date January 2006.

A State agency psychologist reviewed the medical evidence in April 2004 and concluded on a Psychiatric Review Technique form that Plaintiff did not have a severe mental impairment. (R. 218-231.)

**Plaintiff's Testimony**

Plaintiff testified at the hearing held on October 4, 2007. (Tr. 410-457). At the outset of the hearing, counsel for Plaintiff alerted the ALJ to the fact that the Appeals Council had misconstrued Dr. Guzik's August 2004 opinion. Dr. Guzik wrote that Plaintiff was capable of lifting less than 5 pounds (using a mathematical symbol to represent "less than"). Apparently, the Appeals Council interpreted the "less than" sign as a two and thus concluded that Dr. Guzik inexplicably found Plaintiff could lift 25 pounds. (Tr. 413-417.)

Plaintiff testified that she had not worked since her motor vehicle accident in 2003 due to her various alleged impairments. (Tr. 422.) Plaintiff described her physical symptoms and limitations as: a skin disease of her hands and feet; constant low back

pain rated as an "8" with medicine; an inability to hold her head up due to intense neck pain; occasional pain in her wrist; shortness of breath when doing anything that's active; loss of bladder control; and "falling spells" which prompted her treating physician to prescribe a wheelchair for her approximately six months before the hearing took place. With respect to her mental health complaints, she complained of an inability to focus and concentrate; frustration and panic attacks; depression with suicidal ideation; and a fear of people. (R. 418- 420, 423- 428, 431, 432, 437, 440.) As a result of these impairments, Plaintiff estimated she could sit for about 20 minutes at a time, she could only stand for five minutes at a time, she could walk approximately the distance of four car lengths and could lift three to four pounds. (R. 428-30.)

Plaintiff testified that she spends most of her time laying in a recliner primarily because of her neck pain. (R. 431.) Plaintiff testified that she had recently sought mental health care treatment because she contemplated shooting herself in April 2007. (R. 427.)

In the ALJ's review of the record, including Plaintiff's testimony, medical records from several health care providers, and testimony from a vocational expert ("VE"), the ALJ determined that Plaintiff suffers from degenerative disc disease of the cervical and lumbar spine, obesity, and chronic pain syndrome. (R. 22.) While these impairments are severe, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Title 20, Part 404, Subpart P, Appendix 1 of the Code of Federal Regulations. (R. 24.) Specifically, the ALJ found that the objective medical evidence fails to establish that

Plaintiff met the criteria of Section 1.00 et seq., *Musculoskeletal System*, of the Listings of Impairments. (R. 24.)

The ALJ then found that Plaintiff retained the RFC to perform the exertional demands of unskilled sedentary work. (R. 24.) The ALJ limited Plaintiff to lifting and/or carrying 5 pounds frequently and 10 pounds occasionally; standing and/or walking for a total of 2 hours in an 8 hour workday; and sitting 6 hours in an 8 hour workday with only occasional climbing, balancing, stooping, crouching, kneeling, and/or crawling. As for Plaintiff's mental health allegations, the ALJ found that Plaintiff did not suffer from a severe mental impairment and that she has only mild restriction of activities of daily living; mild difficulties maintaining social functioning; mild difficulties in maintaining concentration, persistence, and pace; and no episodes of decompensation. (R. 23). After finding that Plaintiff could not perform her past relevant work as a nurse aide, waitress or meat packer at any time since Plaintiff's alleged onset of disability, the ALJ proceeded to step five of the sequential analysis.

Having found Plaintiff capable of unskilled sedentary work, the ALJ concluded that, when Plaintiff turned 50 years of age in January 2006, her age category changed and therefore application of Rule 201.10 of the Medical-Vocational Guidelines (the "grids") resulted in a finding that Plaintiff was "disabled" beginning on January 4, 2006. (R. 27.)

However, with respect to the time period encompassing Plaintiff's alleged onset of disability through January 2006, the ALJ concluded that direct application of the grids was inappropriate because Plaintiff's ability to perform the exertional demands of the full

range of sedentary work was "impeded by additional limitations." The ALJ consulted a vocational expert to determine the extent to which these additional limitations eroded the occupational base of unskilled sedentary work. (R. 27.) Based upon the VE's testimony that an individual with Plaintiff's age, education, work experience, and RFC would be capable of performing jobs which existed in significant numbers in the national economy, the ALJ concluded that Plaintiff not disabled prior to January 4, 2006. (R. 27.)

## IV. DISCUSSION

Plaintiff contends that remand of this matter is warranted because the ALJ erred by: (1) failing to follow the directives set forth in the Appeals Council's remand order dated July 29, 2007; (2) improperly rejecting the opinion of a treating physician; (3) failing to obtain the services of a medical advisor to assist in determining the onset of Plaintiff's disability; and (4) failing to set forth specific reasons for finding Plaintiff's complaints of disabling pain "not entirely credible." Plaintiff's first argument - that the ALJ failed to comply with the Appeals Council's remand order - necessarily encompasses the remaining three arguments and, therefore, the Court will address each of these three arguments.

### A.     *The ALJ did not err in his consideration of Dr. Guzik's opinions.*

Plaintiff argues that the ALJ failed properly to evaluate the opinion of Dr. Guzik and failed to include Dr. Guzik's limitations in his assessment of Plaintiff's RFC. Dr. Guzik has been Plaintiff's treating physician since 2002. As a threshold matter, to the extent Plaintiff argues that the ALJ's assessment of Dr. Guzik's opinions failed follow the directives of the Appeals Council's remand order, the argument lacks merit. The

14

concern of the Appeals Council regarding the ALJ's prior treatment of Dr. Guzik's medical records and opinions stemmed from an apparent misinterpretation of one of Dr. Guzik's handwritten opinions. The Appeals Council inadvertently misread Dr. Guzik's note to mean that Plaintiff was capable of lifting 25 pounds (by misinterpreting Dr. Guzik's handwritten "less than" mathematical symbol as a "two"). In view of the ALJ's prior determination that Plaintiff was capable of only sedentary work—which requires lifting of no more than ten pounds—the Appeals Council directed the ALJ to reconsider the evidence from Dr. Guzik to resolve this perceived inconsistency. (R. 307-08.) On remand, the ALJ resolved this discrepancy—both at the hearing and in his written decision—by confirming that Dr. Guzik's opined that Plaintiff should be limited to lifting no more than *five* pounds, and not *twenty five* pounds. (R. 26, 413-16.)

Plaintiff then argues that the ALJ erred because he rejected and did not include in his RFC finding Dr. Guzik's assessments that Plaintiff was incapable of performing the minimal demands of sedentary work. Specifically, Plaintiff points to Dr. Guzik's opinions from September 2003, January 2004, and August 2004. In September 2003, Dr. Guzik limited Plaintiff to working a maximum of five hours a day and a total of fifteen hours a week subject to the following additional limitations:

(1) No repetitive arm movements for more than thirty seconds at a time and then needs a five minute rest before repetitive arm movement again.

(2) No standing more than five minutes at a time and then needs a fifteen minute rest to sit before standing again.

(3) No lifting more than five pounds; and

(4) No work in temperature greater than 85 degrees fahrenheit or less than 60 degrees fahrenheit.

(R. 249.) However, these limitations were imposed shortly after Plaintiff incurred the injuries in the motor vehicle accident in August 2003 which Plaintiff alleges resulted in disabling pain. Dr. Guzik thereafter amended his assessment of Plaintiff's impairments in the subsequent opinions rendered in January 2004 and August 2004 and opined that Plaintiff was limited to lifting no more than five pounds, no forward bending, and no overhead work. (R. 248, 261.)

In his written decision, the ALJ explicitly considered the opinions and findings of Dr. Guzik—including Dr. Guzik's limitations of no lifting more than five pounds, no forward bending, and no overhead reaching and/or handling. (R. 25-26.)  The ALJ, however, did not incorporate all of these functional limitations in Plaintiff's RFC and, as the Commissioner concedes, the ALJ did not adequately articulate his rationale for discounting those portions of Dr. Guzik's opinions. "When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate his reasons."[24]

Nonetheless, the Commissioner argues that the ALJ's failure to provide his rationale for giving less weight to a treating physician was harmless error in this case because, as evidenced by the VE's testimony at the hearing, even if the ALJ had included the additional limitations in Plaintiff's RFC, his ultimate determination that Plaintiff was capable of work that existed in significant numbers in the national economy

---

[24] Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

prior to January 2006 would still be supported by substantial evidence.[25] At the hearing, the ALJ asked the VE the following hypothetical question:

> Q: We have a claimant who was considered a younger person up to January 4, 2006, when she attained age 50 and would be considered a person closely approaching advanced age and she has a fifth grade education, work experience [as previously described]. Assume that I find that she can stand and walk for six hours in an eight-hour workday, and that she can occasionally lift and carry no more than 10 pounds, should avoid repetitive bending. . .
>
> . . . .
>
> Are there any jobs within the national economy that she would have been able to perform with those restrictions?

(R. 624-25.) In response to the hypothetical—which incorporated additional limitations not included in the RFC the ALJ ultimately assigned to Plaintiff—the VE identified three representative occupations that an individual with such limitations would be capable of performing: an order clerk,[26] a surveillance system monitor,[27] and a final assembler.[28] (R. 447-48.) The ALJ then posed a second hypothetical question:

> Q: Let me give you a second hypothesis. Same person as in [the prior hypothetical question], assume that this person is restricted to lifting no more than five pounds with no forward bending and no overhead work. . .
>
> . . . .

---

[25] *See, e.g.*, Caldwell v. Barnhart, 261 Fed. Appx. 188, 190 (11th Cir. 2008) ("When an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision [should] stand.") (citing Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983)).

[26] DICTIONARY OF OCCUPATIONAL TITLES § 209.567-014 (4th ed. 1991).

[27] Id. § 379.367-010.

[28] Id. § 713.687-018.

> Are there any jobs that this person would be able to perform within the national economy?

(R. 448-49.) In response to the second hypothetical, the VE testified that the additional limitations would not change her opinion that a person with such limitations would be capable of performing jobs which exist in significant numbers in the national economy. (R.448-51.) Thus, even if the ALJ incorporated the entirety of Dr. Guzik's January 2004 and August 2004 opinions concerning Plaintiff's functional limitations arising from her impairments into his assessment of her RFC, based upon the testimony of the VE, there was still substantial evidence that there were jobs available in significant numbers in the national economy that could be performed by an individual even with the restrictions imposed by Dr. Guzik. As such the result would be the same and therefore any error is harmless and is not a reason to reverse the decision of the Commissioner. There is no reason to remand a case for additional proceedings, as here, where there is no reason to believe that the remand would lead to a different result.[29]

**B.      The ALJ properly assessed Plaintiff's credibility.**

Plaintiff also challenges the ALJ's assessment of Plaintiff's credibility. Plaintiff argues that the ALJ committed reversible error by failing to set forth specific reasons for his determination that Plaintiff's complaints of incapacitating pain were not entirely credible. In evaluating a disability, the ALJ must consider all of a claimant's impairments, including her subjective symptoms such as pain, and determine the extent

---

[29] *See* Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983); Miller v. Barnhart, 182 Fed. Appx. 959, 964 (11th Cir. 2006)(Even where an ALJ improperly applies the regulations in reaching his decision, it does not constitute reversible error if the correct application of the guidelines would not contradict the ALJ's ultimate findings.)

to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.[30]  Where, as here, an ALJ decides not to fully credit a claimant's testimony about subjective complaints concerning the intensity, persistence and limiting effects of symptoms, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.[31] "The ALJ is not required to explicitly conduct a credibility analysis, but the reasons for finding a lack of credibility must be clear enough that they are obvious to a reviewing court."[32]

The ALJ's decision establishes a clear record of the reasons why the ALJ concluded that Plaintiff's pain testimony was not entirely credible. The ALJ identified evidence that Plaintiff's impairments were not totally incapacitating. For example, in November 2003 Plaintiff advised her physical therapist that she was "feeling great," her pain was subsiding, and she was ready to return to work. The corresponding treatment notes document an 80% improvement in Plaintiff's condition since she initiated therapy following her motor vehicle accident.

The ALJ also determined that the report from Dr. Perdomo, the consultative examining physician, conflicted with Plaintiff's testimony. In his report, Dr. Perdomo acknowledged Plaintiff's serious functional limitations resulting from her neck and back conditions. Nonetheless, and contrary to Plaintiff's complaints of incapacitating pain, Dr.

---

[30] 20 C.F.R. § 404.1528.

[31] Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995); Jones v. Department of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (finding that articulated reasons must be based on substantial evidence); Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

[32] Foote, 67 F.3d at 1562.

Perdomo opined that Plaintiff was capable of performing the exertional demands of sedentary work.

The ALJ disregarded the opinions of two state agency non-examining physicians both of whom opined that Plaintiff was capable of light work and instead accepted Plaintiff's testimony and statements regarding pain to the extent that it exceeded Dr. Perdomo's findings and limited Plaintiff "to sedentary work[33] activity during the entire period at issue." (R. 26.) Indeed, "'[s]edentary work' represents a significantly restricted range of work. Individuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations."[34] In sum, the ALJ gave adequate reasons for not giving full weight to Plaintiff's pain testimony and such reasons are supported by substantial evidence.

### C.   The ALJ was not obligated to enlist the assistance of a medical advisor.

Lastly, Plaintiff argues that the ALJ failed to follow the remand order from the Appeals Council and violated the guidelines set forth in Social Security Ruling 83-20 by not obtaining assistance from a medical advisor.

With regard to the Appeals Council's directives, the Appeals Council's remand order was prompted by two perceived factual conflicts. First, as previously discussed, the Appeals Council misinterpreted the functional limitations assigned by Plaintiff's

---

[33] The guidelines define sedentary work as follows:
Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.
20 C.F.R. § 404.1567(a).

[34] Soc. Sec. Admin. Rul. 96-9p, 61 Fed. Reg. 34,478 (July 2, 1996).

treating physician. Second, the Appeals Council incorrectly noted that the ALJ's prior determination that Plaintiff had the RFC to perform sedentary work during the whole period at issue was not supported by the evidence of record because "consultative examining and nonexamining physicians all concluded that the claimant was capable of performing light work." (R. 307.) However, the opinion of Dr. Perdomo, the consultative examining physician whose opinion the Appeals Council referred to in its remand order, actually supports rather than contradicts the ALJ's RFC assessment. According to his report, Dr. Perdomo found "moderate to severe musculoskeletal functional limitations on physical examination of [Plaintiff's] cervical and thoracolumbar spine" and—consistent with the ALJ's assessment—essentially limited Plaintiff to sedentary work. (R. 205-06.) Thus, because both reasons for the Appeals Council's remand were premised on inaccurate interpretations of the medical evidence of record, the ALJ found no evidentiary ambiguities or inconsistencies requiring clarification – and Plaintiff has not identified any. The remand order directed the ALJ to "*if necessary*, obtain evidence from a medical expert to clarify the nature, severity, and limiting effects of the claimant's impairments during the whole period at issue." (R. 308) (emphasis added). As such, because the ALJ appropriately found the services of a medical expert to be unnecessary, his decision complied with the remand order.

Plaintiff also contends that the ALJ was required, pursuant to Social Security Ruling 83-20, to obtain testimony from a medical expert in order to establish Plaintiff's disability onset date considering the slow progressive nature of her medically

determinable impairments of degenerative disc disease, chronic pain syndrome, and depression. This argument is misplaced.

First, with regard to the ALJ's consideration of Plaintiff's mental health complaints – all of the medical evidence of record documenting Plaintiff's medical treatment prior to January 2006 is consistent with the ALJ's assessment that she did not suffer from a severe mental impairment at any time during that time frame. Plaintiff was regularly examined by various physicians and mental status examinations were consistently unremarkable.

Regardless of whether Plaintiff's medically determinable impairments were slow and progressive in nature, the ALJ's consideration of Plaintiff's RFC was based upon a fully developed record. As previously discussed, the Court's review of the medical evidence of record did not reveal any ambiguities or gaps requiring further clarification. Further, the ALJ's ultimate finding that Plaintiff's period of disability began in January 2006 was premised on a change in Plaintiff's age category – not as a result in any perceived change in her RFC. Thus, even if the ALJ had found Plaintiff capable of the full range of unskilled sedentary work, when Plaintiff's age category changed in January 2006, the ALJ's direct application of the grids dictated a finding of "disabled." Accordingly, the ALJ's determination that Plaintiff's period of disability began on January 4, 2006 had nothing to do with any adjustment in Plaintiff's RFC and as such there was no need for medical assistance to determine the date of onset.

## V.  CONCLUSION

In view of the foregoing, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter final judgment in favor of the Commissioner consistent with this Order and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on March 4, 2010.

GARY R. JONES
United States Magistrate Judge

Copies to:
　　All Counsel